[Cite as *G.A.I. Capital Group, L.L.C. v. Vick*, 2026-Ohio-2890.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

G.A.I. CAPITAL GROUP LLC,

Plaintiff-Appellee,

v.

MICHAEL VICK ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 MA 0111**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2024 CV 01424

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Brian A. Coulter*, Roetzel & Andress, for Plaintiff-Appellee and

*Atty. James E. Lanzo* and *Atty. Thomas E. Lyden,* James E. Lanzo LLC, for Defendants-Appellants.

Dated: July 27, 2026

**DICKEY, J.**

{¶1} Appellants, Michael and Kijafa Vick, appeal from the November 18, 2025 judgment of the Mahoning County Court of Common Pleas denying their Civ.R. 60(B) motion for relief from judgment without a hearing. On appeal, Appellants raise a single assignment of error asserting the trial court abused its discretion in denying their Civ.R. 60(B) motion. Appellants' arguments on appeal are purely procedural. Appellants contend the court lacked personal jurisdiction and because certified mail receipts were returned unsigned, Appellee, G.A.I. Capital Group LLC, could not have perfected service by certified mail under Civ.R. 4.1 or ordinary mail under Civ.R. 4.6. Appellants believe they demonstrated a meritorious defense or claim, entitlement to relief, and timeliness. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2} Appellee is an Ohio limited liability company with its principal place of business in Canfield, Mahoning County, Ohio. Appellants, husband and wife, reside at 17120 Magnolia Estates Drive, Southwest Ranches, Florida 33331.

{¶3} On June 28, 2024, Appellee filed a complaint against Appellants. The complaint alleged that the trial court had personal and subject matter jurisdiction over both Appellants because Michael traveled to Ohio in 2019 in an effort to procure a loan with Appellee's assistance and both Appellants were involved in the ultimate loan transaction with Appellee. The specifics concerning the loan transaction are not at issue here. In fact, when questioned during oral argument, Appellants' counsel stated he was not sure about the cash or collateral amounts. Appellants ceased making payments in 2020. In its complaint, Appellee asserted claims for breach of contract, unjust enrichment, promissory estoppel, and fraudulent inducement. Appellee filed with its complaint "Instructions for Service," in which it requested the Clerk of Courts to serve summons and a copy of the complaint upon Appellants via certified mail, return receipt requested, to 17120 Magnolia Estates Drive, Southwest Ranches, Florida 33331.

{¶4} On July 2, 2024, the Clerk of Courts followed Appellee's instructions by mailing summons and the complaint to Appellants via certified mail. On July 15, 2024, the Clerk's office received from the United States Postal Service ("USPS") two certified

mail return cards with no envelopes attached: (1) certified mail return for Kijafa Vick, USPS tracking number 9414726699042225798798; and (2) certified mail return for Michael Vick, USPS tracking number 9414726699042225798781. Both certified mail returns were unsigned. However, the USPS tracking numbers included on the bottom of the returns confirm that both certified mail envelopes were "Delivered, Left with Individual," on July 9, 2024. The Clerk designated service on the docket as "questionable" as to both Appellants and "successful" as to Michael.

{¶5} Because Appellants either failed or refused to sign for certified mail service, Appellee properly filed a "Praecipe for Service by Regular Mail," pursuant to Civ.R. 4.6, on August 13, 2024. Appellee asked the Clerk of Courts to send summons and a copy of the complaint to Appellants via ordinary mail at the same address to which certified mail was directed: 17120 Magnolia Estates Drive, Southwest Ranches, Florida 33331. The Clerk entered certificates of service on the docket reflecting "successful" service as to both Appellants two days later on August 15, 2024. There is no evidence or other indication that the ordinary mail copies were returned to the Clerk as undeliverable. Thus, proper service was perfected.

{¶6} In addition, on November 14, 2024, Michael made an unsolicited telephone call to Appellee's counsel, Attorney Brian A. Coulter, and left him the following recorded voice message: "Brian, how are you doing? This is Michael Vick. Give me a call back [phone number omitted] pertaining to some paperwork that was sent to the house. Thank you." (R-16). We note that Michael never claimed that it was not him on the voice message. We further note that Appellee's counsel indicated at oral argument that it was Michael Vick that called and left him a voice message. This was Michael's first contact with Appellee's attorney. Michael had no reason to call Appellee's counsel (or even know of his existence) other than to contact him with regard to the complaint, which contained Appellee's counsel's signature and contact information. *See* (R-17, Exhibit 1, Affidavit of Brian A. Coulter). Michael's recorded voice message reveals the Florida address where service of process was directed is the correct address of Appellants' residence and that Appellants received the summons and complaint sent to them by the Clerk of Courts. After Appellee's counsel attempted to call Michael back and after Appellants failed to

Case No. 25 MA 0111

answer the complaint, Appellee filed a motion for default judgment against Appellants on December 26, 2024. The trial court granted Appellee's motion on December 30, 2024.

{¶7} On July 11, 2025, Appellants' counsel entered his appearance in the trial court. On October 20, 2025, Appellants filed two motions: (1) a Civ.R. 60(B) motion for relief from judgment; and (2) a motion to declare the December 30, 2024 judgment (which granted Appellee's motion for default judgment) void. In support of both motions, Appellants claim they "have never been personally served, by mail, or otherwise, with a copy of the summons or complaint . . ." (R-12 and R-13, Exhibit 1, Affidavit of Michael Vick; Exhibit 2, Affidavit of Kijafa Vick).

{¶8} On November 3, 2025, Appellee filed a brief in opposition. In support, Appellee filed USB drives with the Clerk of Courts containing Michael's recorded voice message to Appellee's attorney in which he admitted to receiving "some paperwork," i.e., a copy of the complaint, at his house. (R-15 and R-16). On November 13, 2025, Appellants filed a reply.

{¶9} On November 18, 2025, the trial court denied both of Appellants' motions without an evidentiary hearing. Specifically, the court stated:

> Defendants, Michael Vick and Kijafa Vick move this Court to vacate the Judgment Entry of Default entered against them on December 30, 2024 pursuant to Civ.R. 60(B) and also on the basis that it is void due to a lack of personal jurisdiction, insufficiency of service of process and "unclean hands."
>
> Defendants' primary basis to attack the validity of the Judgment Entry filed December 30, 2024 is that they were not properly served with summons and complaint. A review of the docket of this Court reflect the efforts utilized to obtain service of summons and complaint upon the Defendants. On July 15, 2024 the Clerk of Court entered onto the docket notices reflecting "questionable service" on Defendant, Kijafa Vick and both "successful" and "questionable" service on Defendant, Michael Vick. Thereafter, on August 13, 2024 Plaintiff requested that the Clerk serve the complaint and summons by Regular U.S. Mail upon the Defendants at the

very same address pursuant to Civ.R. 4.6. This regular mail was never returned to the Clerk as being undelivered.

Furthermore, and perhaps most telling, on November 14, 2024 Plaintiff's counsel received a voicemail message from Defendant, Michael Vick that was left on Plaintiff's counsel's direct office line wherein Defendant, Michael Vick provided his telephone number and requested a return phone call to discuss "some paperwork that was sent to the house." A true and accurate copy of the audio file of the voice message was filed separately with the Court and reviewed by the Trial Court. Plaintiff's counsel had caused no other documents to be sent to Defendants' residence around this time and, as such, Defendant, Michael Vick could only have been describing the summons and complaint in the message. As such, the Court rejects Defendants' argument that this Court lacks personal jurisdiction over the Defendants or that the Defendants were not otherwise properly served with summons and complaint.

In addition, although these motions were filed within the one-year limitation imposed by Civ.R. 60(B) it does not automatically follow that all motions filed within that period are indeed timely. Defendants have failed to provide any explanation for the delay in attacking this Judgment whatsoever. The voicemail message previously referenced herein is a clear indication that the Defendants have known about this proceeding for over a year. Defendants provide no explanation, whatsoever, for these delays.

In addition, the Court finds that the Defendants have failed to establish "excusable neglect" or the existence of [a] meritorious defense to this claim, whatsoever.

Based upon the foregoing, Defendants' Motion for Relief from Judgment under Civ.R. 60(B) and Motion to Declare Judgment Entry of December 30, 2024 Void are overruled in their entirety.

IT IS SO ORDERED.

There is no just cause for delay.

(11/18/2025 Judgment Entry, p. 1-2).

**{¶10}** Appellants filed a timely appeal and raise a single assignment of error with respect to the trial court's denial of their Civ.R. 60(B) motion.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANTS RELIEF FROM JUDGMENT UNDER CIV.R. 60(B) DESPITE THE SATISFACTION OF THE RULE'S REQUIREMENTS.**

**{¶11}** In their sole assignment of error, Appellants argue the trial court abused its discretion in denying their Civ.R. 60(B) motion. Appellants contend the court lacked personal jurisdiction and because certified mail receipts were returned unsigned, Appellee could not have perfected service by certified mail under Civ.R. 4.1 or ordinary mail under Civ.R. 4.6. Appellants believe they demonstrated a meritorious defense or claim, entitlement to relief, and timeliness.

In order to prevail on a Civ.R. 60(B) motion, "the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *Ohio Receivables, LLC v. Millikin*, 7th Dist. Columbiana No. 17 CO 0038, 2018-Ohio-3734, ¶ 19, quoting *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus. Courts are not required to hold a hearing on a Civ.R. 60(B) motion unless the motion and accompanying materials contain operative facts to support relief under Civ.R. 60(B). *Id.* at ¶ 19,

Case No. 25 MA 0111

citing *Summers v. Lancia Nursing Homes, Inc.*, 2016-Ohio-7935, 76 N.E.3d 653, ¶ 40 (7th Dist.).

The standard of review used to evaluate the trial court's decision to grant or deny a Civ.R. 60(B) motion is abuse of discretion. *Ohio Dept. of Job & Family Servs. v. State Line Plumbing & Heating, Inc.*, 7th Dist. Mahoning No. 15 MA 0067, 2016-Ohio-3421, ¶ 12.

*Paczewski v. Antero Resources Corp.*, 2019-Ohio-2641, ¶ 26-27 (7th Dist.).

**{¶12}** An abuse of discretion occurs when a court exercises its judgment "in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

**{¶13}** Appellants believe the trial court lacked personal jurisdiction.

Ohio's long-arm statute, codified as R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) governing service of process, permit a court to exercise personal jurisdiction over a nonresident defendant and provide for service of process when the cause of action arises from the nonresident's "transacting any business" in Ohio. The term "transacting business," for purposes of R.C. 2307.382(A)(1) and Civ.R. 4.3, has been broadly interpreted and encompasses "carrying on business" and "having dealings" in the state. *Hercules Tire & Rubber Co. v. Murphy*, 133 Ohio App.3d 97, 100, 726 N.E.2d 1080 (1999), citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 559 N.E.2d 477 (1990).

*America's Wholesale Outlet LLC v. Eckert*, 2024-Ohio-5680, ¶ 31 (7th Dist.).

**{¶14}** As stated, Appellants reside in Florida. Michael traveled to Ohio in 2019 in an effort to procure a loan with Appellee's assistance. Both Appellants were involved in the ultimate loan transaction with Appellee. Appellants ceased making payments in 2020, which lead to the filing of the complaint at issue. Based on the facts presented, the trial court did not err in exercising personal jurisdiction over Appellants under Ohio's long-arm

statute as Appellants were "carrying on business" and "having dealings" with Appellee in Ohio. *Id.*

**{¶15}** Appellants also believe the trial court failed to perfect service.

**{¶16}** Civ.R. 4.3, "Process: out-of-state service," states in part:

> **(A) When Service Permitted.** Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state . . .
>
> . . .
>
> **(B) Methods of Service.**
>
> *(1) Service by Clerk.* The clerk may make service of process or other documents to be served outside the state in the same manner as provided in Civ.R. 4.1(A)(1) through Civ.R. 4.1(A)(3).

Civ.R. 4.3(A) and (B)(1).

**{¶17}** Civ.R. 4.1, "Process: methods of service," states in part:

> **(A) Service by Clerk.**
>
> *(1) Methods of Service.*
>
> (a) Service by United States certified or express mail. Evidenced by return receipt signed by any person accepting delivery, service of any process shall be by United States certified or express mail unless otherwise permitted by these rules. The clerk shall deliver a copy of the process and complaint or other document to be served to the United States Postal Service for mailing at the address set forth in the caption or at the address set forth in written instructions furnished to the clerk as certified or express mail return receipt requested, with instructions to the delivering postal

employee to show to whom delivered, date of delivery, and address where delivered.

. . .

(2) *Docket Entries; Return*. The clerk shall forthwith enter on the appearance docket the fact of delivery to the United States Postal Service for mailing or the fact of delivery to a specified commercial carrier service for delivery, and make a similar entry when the return receipt is received. If the return shows failure of delivery, the clerk shall forthwith notify the attorney of record or, if there is no attorney of record, the party at whose instance process was issued and enter the fact and method of notification on the appearance docket. The clerk shall file the return receipt or returned envelope in the records of the action.

Civ.R. 4.1(A)(1)(a) and (2).

**{¶18}** Civ.R. 4.6, "Process: limits; amendment; service refused; service unclaimed," sets forth requirements if service is "refused" or "unclaimed." *See* Civ.R. 4.6(C) and (D).

**{¶19}** In this case, Appellants' October 20, 2025 Civ.R. 60(B) motion was timely filed, i.e., made within a reasonable time and not more than one year after the trial court's December 30, 2024 judgment, granting Appellee's motion for default judgment. (*GTE* third prong). The one-year period constitutes the controlling timeframe here given the service disputes. The two remaining issues are whether Appellants have demonstrated a meritorious defense or claim (*GTE* first prong) and whether they are entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5) (*GTE* second prong).

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic),

misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment.

Civ.R. 60(B).

**{¶20}** Regarding the *GTE* first prong, Appellants assert they have demonstrated "a meritorious defense or claim" that would justify granting their Civ.R. 60(B) motion.

**{¶21}** "Meritorious" is defined as, "worthy of legal victory; having enough legal value to prevail in a dispute." *Black's Law Dictionary* (12th Ed. 2024).

"A 'meritorious defense' means a defense 'going to the merits, substance, or essentials of the case.' . . . Relief from a final judgment should not be granted unless the party seeking such relief makes at least a prima facie showing that the ends of justice will be better served by setting the judgment aside." *Wayne Mut. Ins. Co. v. Marlow* (June 5, 1998), Montgomery App. No. 16882, 1998 WL 288912, *2-3, quoting Black's Law Dictionary, abridged (6th Ed.Rev. 1991) 290. Broad, conclusory statements do not satisfy the requirement that a Civ.R. 60(B) motion must be supported by operative facts that would warrant relief from judgment. *Cunningham v. Ohio Dept. of Transp.,* Franklin App. No. 08AP–330, 2008-Ohio-6911, 2008 WL 5423320, ¶ 37; *Bennitt v. Bennitt* (May 26, 1994), Cuyahoga App. Nos. 65094 and 66055, 1994 WL 236295.

*GMAC Mortg., L.L.C. v. Herring*, 2010-Ohio-3650, ¶ 32 (2d Dist.).

**{¶22}** Appellants' argument centers on defenses associated with service of process. Appellants supported their Civ.R. 60(B) motion with bare-bone, self-serving affidavits. *See* (R-12 and R-13, Exhibit 1, Affidavit of Michael Vick; Exhibit 2, Affidavit of Kijafa Vick). In each affidavit, Appellants claim they "have never been personally served, by mail, or otherwise, with a copy of the summons or complaint." However, this assertion is undermined by the fact that service was perfected via ordinary mail after certified mail

Case No. 25 MA 0111

was delivered to Appellants' house but unsigned. In addition, this assertion is further undermined by Michael's recorded voice message to Appellee's counsel in which he admitted to receiving "some paperwork," i.e., a copy of the complaint, at his house. *See Id.*; (R-16). Again, we note that Michael never claimed that it was not him on the voice message. We further note that Appellee's counsel indicated at oral argument that it was Michael Vick that called and left him a voice message. Appellants provide no other evidence or non-procedural argument to support their service of process related defenses. Thus, Appellants fail to allege enough operative facts to prevail on a Civ.R. 60(B) motion.

{¶23} Appellants' procedural and legal arguments also lack substance. Appellants incorrectly believe that service by certified mail can only be proved through a signed return. While a signed return receipt does constitute evidence of delivery by certified mail pursuant to Civ.R. 4.1(A), "the rule does not bar introduction of other evidence to establish certified mail delivery." *In re Estate of Riley*, 2006-Ohio-956, ¶ 19 (4th Dist.). Ultimately, "[d]ue process determines the parameters of proper service, and if service is reasonably calculated to reach the interested parties and to apprise them of the action in which they may have a potential interest, then the service is sufficient." *Id.*, citing *Mitchell v. Mitchell*, 64 Ohio St.2d 49 (1980), paragraph two of the syllabus. "Service by certified mail is perfected when it is sent to an address 'reasonably calculated to cause service to reach the defendant.'" *Ross v. Olsavsky*, 2010-Ohio-1310, ¶ 13 (7th Dist.), quoting *Rokakis v. Estate of Thomas*, 2008-Ohio-5147, ¶ 12 (8th Dist.), citing *Ohio Civ. Rights Comm. v. First Am. Properties*, 113 Ohio App.3d 233, 237 (1996).

{¶24} As stated, on July 2, 2024, the Clerk of Courts followed Appellee's instructions by mailing summons and the complaint to Appellants via certified mail. On July 15, 2024, the Clerk's office received from USPS two certified mail return cards with no envelopes attached for Michael and Kijafa Vick. Both certified mail returns were unsigned. However, the USPS tracking numbers included on the bottom of the returns confirm that both certified mail envelopes were "Delivered, Left with Individual," on July 9, 2024. The Clerk designated service on the docket as "questionable" as to both Appellants and "successful" as to Michael.

{¶25} Because Appellants either failed or refused to sign for certified mail service, Appellee properly filed a "Praecipe for Service by Regular Mail," pursuant to Civ.R. 4.6, on August 13, 2024. Appellee asked the Clerk of Courts to send summons and a copy of the complaint to Appellants via ordinary mail at the same address to which certified mail was directed. The Clerk entered certificates of service on the docket reflecting "successful" service as to both Appellants two days later. There is no evidence or other indication that the ordinary mail copies were returned to the Clerk as undeliverable. Thus, proper service was perfected.

{¶26} In addition, Michael admitted in his recorded voice message to Appellee's counsel that the paperwork (complaint) was sent to the correct address, i.e., Appellants' personal residence: "Brian, how are you doing? This is Michael Vick. Give me a call back [phone number omitted] pertaining to some paperwork that was sent to the house. Thank you." (R-16). Appellants had the opportunity to swear under oath that it was not in fact Michael on the voice message, that the address to which service was directed was inaccurate, or that one or both of them was not residing at that address when the complaint was sent to them. However, neither Appellant did so.

{¶27} The accuracy of the address to which service was directed is not in question here and the trial court was presented with strong evidence of delivery. The tracking information provided on the certified mail returns reveals that both envelopes were delivered and left with an individual at Appellants' house. Because Appellants either failed or refused to sign for certified mail service, Appellee properly asked the Clerk of Courts to send summons and a copy of the complaint to Appellants via ordinary mail at the same address to which certified mail was directed. The follow-up service via ordinary mail was docketed as "successful" as to both Appellants. The successful ordinary mail service and Michael's audio admission of receipt of service completely undermine Appellants' affidavit testimony.

{¶28} The trial court was presented with ample evidence of successful service. The record reveals Appellants receive mail at the designated address and did, in fact, receive the complaint at that address. However, for whatever reason, Appellants chose not to sign for the certified mail. The record also reveals that the summons and copies of the complaint sent via ordinary mail were never returned to the Clerk of Courts as

undeliverable. Therefore, service via ordinary mail to Appellants' same address "is reasonably calculated to provide [Appellants] with notice and an opportunity to be heard." *In re Thompkins*, 2007-Ohio-5238, ¶ 23. Thus, proper service was perfected via ordinary mail under Civ.R. 4.6. *Id.* (If an interested party has chosen not to sign for certified mail, a follow-up via ordinary mail is reasonably calculated to provide the party with notice and an opportunity to be heard. Such communication, if not returned, bears a strong inference that the party received the document).

{¶29} Appellants' motion reveals no allegations or evidentiary materials setting forth operative facts which would support a meritorious defense or claim.

{¶30} Regarding the *GTE* second prong, Appellants argue they are entitled to relief under Civ.R. 60(B)(1) ("excusable neglect") and (5) ("any other reason justifying relief").

{¶31} First, Appellants claim they are entitled to relief under Civ.R. 60(B)(1). Neglect is not excusable "if it is an act of complete disregard for the judicial system." *John Soliday Fin. Group, L.L.C. v. Moncreace*, 2011- Ohio-1471, ¶ 14 (7th Dist.), citing *Kay v. Marc Glassman, Inc.*, 76 Ohio St.3d 18, 20 (1996). Neglecting to do anything about a filed lawsuit is not excusable. *Moncreace* at ¶ 15, citing *Associated Estates, Corp. v. Fellows*, 11 Ohio App.3d 112 (8th Dist. 1983); *see also Moncreace* at ¶ 16, quoting *Yuhanick v. Cooper*, 1998 WL 811355, *5 (7th Dist. Nov. 16, 1998) ("'(a) party who is informed of court action against him and fails to seek legal assistance does so at his risk and such conduct cannot be said to constitute "excusable neglect" under Civ.R. 60(B)(1) or (5) unless a compelling reason is presented, like a serious illness.'")

{¶32} Appellants claim they failed to answer Appellee's complaint because they were not properly served. However, as addressed, the record reveals service was perfected. In addition, Appellants made no attempt to address Michael's November 14, 2024 voice message to Appellee's counsel acknowledging receipt of the "paperwork" (complaint) at Appellants' house. (R-16).

{¶33} There is no evidence to support Appellants' claim of "excusable neglect." Upon a review of the record, the trial court did not abuse its discretion in concluding that Appellants were not entitled to relief under Civ.R. 60(B)(1) as their motion does not

contain operative facts to support relief. *See Paczewski,* 2019-Ohio-2641, at ¶ 26 (7th Dist.).

**{¶34}** Second, Appellants allege they are entitled to relief under the "any other reason justifying relief" provision in Civ.R. 60(B)(5). This "catch-all" provision, however, only applies when a more specific provision does not. *Tabor v. Tabor,* 2003-Ohio-1432, ¶ 30 (7th Dist.). The grounds for invoking Civ.R. 60(B)(5) should be substantial. *Id.* For the same reasons above, involving the specific provision in Civ.R. 60(B)(1), Appellants are not entitled to relief under Civ.R. 60(B)(5). *See Paczewski* at ¶ 26.

**{¶35}** Accordingly, the trial court did not abuse its discretion in denying Appellants' Civ.R. 60(B) motion for relief from judgment without a hearing.

## CONCLUSION

**{¶36}** For the foregoing reasons, Appellants' sole assignment of error is not well-taken. The November 18, 2025 judgment of the Mahoning County Court of Common Pleas denying Appellants' Civ.R. 60(B) motion for relief from judgment without a hearing is affirmed.


Robb, J., concurs.

Hanni, J., dissents with dissenting opinion.


Case No. 25 MA 0111

Hanni, J., dissenting.

**{¶37}** With regard and respect to my colleagues, I must dissent from the Majority Opinion. The majority affirms the denial of relief from a default judgment entered against two people who were not officially served with a lawsuit. This stripped them of any defense and fixed their liability. The judgment rests on a record that contains no signed return receipt, no certified-mail envelope returned "refused" or "unclaimed," no evidentiary hearing, and two untested sworn affidavits denying that service ever occurred. Three substitutes stand in place of those missing essentials: an anonymous postal tracking notation, a clerk's docket entry ambiguously reading as "questionable," and a voicemail about "some paperwork."

**{¶38}** Because the Vicks reside in Florida, this is an out-of-state service case governed by Civ.R. 4.3. That Rule directs that "[t]he clerk may make service of process . . . outside the state in the same manner as provided in Civ.R. 4.1(A)(1) through Civ.R. 4.1(A)(3)." Civ.R. 4.3(B)(1). The requirements of Civ.R. 4.1 therefore apply, as well as the conditions of Civ.R. 4.6, which governs certified-mail service attempted "within or outside the state." Civ.R. 4.6(D).

**{¶39}** I would find that certified mail was never perfected. Civ.R. 4.1(A)(1)(a) is exact in its wording: certified-mail service is "[e]videnced by return receipt signed by any person accepting delivery," with instructions to the delivering postal employee "to show to whom delivered, date of delivery, and address where delivered." The evidentiary touchstone the Rule requires is a signature on the return receipt, identifying to whom the process was delivered.

**{¶40}** Here, it is undisputed that the two return cards came back to the clerk on July 15, 2024, as "unsigned," and "with no envelopes attached." Majority Op. ¶ 4, ¶ 24. There is therefore no "return receipt signed by any person accepting delivery." Accordingly, under Civ.R. 4.1(A)(1)(a), certified-mail service was never perfected as to either Appellant.

**{¶41}** Moreover, a clerk's docket label does not substitute for the Rule requirements. This Court's Opinion leans on the clerk having marked Michael's certified service "successful," while simultaneously marking it "questionable," and marking Kijafa's "questionable." *Id.* ¶ 4. But a clerk's characterization is not a legal standard. Only the

Ohio Rules of Civil Procedure govern in this matter. A docket entry reading "successful" cannot convert an unsigned return into a signed one, and even more so when it is also stamped as "questionable." The issue is whether the Rule was satisfied as it is written. I would find that it was not.

**{¶42}** Further, ordinary mail was never authorized, because neither of its triggers occurred. Ordinary-mail service is available only upon one of two specific postal events, each requiring that the certified envelope itself be returned bearing a particular endorsement, neither of which occurred in this case. Civ.R. 4.6(C), (D).

**{¶43}** Civ.R. 4.6(C) governs refused service. It applies only "[i]f attempted service of process by United States certified or express mail . . . is refused, and the certified or express mail envelope . . . shows such refusal." Civ.R. 4.6(C) provides further guidance that the Court's Opinion never addresses: "Failure to claim United States certified or express mail . . . is not refusal of service within the meaning of this division." The provision then states that it "shall not apply if any reason for failure of delivery other than 'Refused' is also shown on the . . . envelope." Civ.R. 4.6(C).

**{¶44}** Civ.R. 4.6(D) governs unclaimed service. It applies only "[i]f attempted service . . . within or outside the state is returned with an endorsement stating that the envelope was unclaimed or a similar endorsement indicating the item was unclaimed." Civ.R. 4.6(D).

**{¶45}** Both subsections of the Rule focus on the specific endorsement or notation on the returned certified envelope. The endorsed return envelope is the triggering event. Here, no envelope was ever returned. The clerk received "two certified mail return cards with no envelopes attached." Majority Op. ¶ 4, ¶ 24. Without the envelope and corresponding notation in the record required by each, the fallback provisions of ordinary mail do not apply.

**{¶46}** The majority concludes that "[b]ecause Appellants either failed or refused to sign for certified mail service, Appellee properly filed a 'Praecipe for Service by Regular Mail,' pursuant to Civ.R. 4.6." Majority Op. ¶ 5, ¶ 25. However, failing or refusing to sign does not trigger Civ.R. 4.6(C). "Failure to claim . . . is not refusal of service." Civ.R. 4.6(C). Further, the certified mail was not refused. The carrier reported it was "Delivered, Left with Individual." In addition, it was not unclaimed, no envelope ever came back

Case No. 25 MA 0111

endorsed "unclaimed," or endorsed at all. Majority Op. ¶ 4. Thus, the predicates for Civ.R. 4.6(C) or (D) did not occur. Accordingly, ordinary mail service was not authorized for perfecting service.

**{¶47}** On this record, I would find that no valid service occurred for either Appellant. The certified return was unsigned, no envelope was ever returned endorsed "Refused" or "Unclaimed," and the "questionable" designation triggers nothing in the Ohio Rules of Civil Procedure. Therefore, I would find that the December 30, 2024 default judgment was void.

**{¶48}** I acknowledge that delivery may be shown by evidence other than the signed return. The Ohio Supreme Court holds that service suffices when "reasonably calculated" to reach the party, and that the signature need not be the defendant's own. *Mitchell v. Mitchell*, 64 Ohio St.2d 49, 51 (1980).

**{¶49}** The Court relies on a voicemail from Appellant which stated: "Brian, how are you doing? This is Michael Vick. Give me a call back . . . pertaining to some paperwork that was sent to the house. Thank you." Majority Op. ¶ 6, ¶ 26. This evidence is not offered to prove that an identified person signed for certified mail. Rather, it is offered to prove that the Vicks knew a complaint had been sent. Majority Op. ¶ 28.

**{¶50}** However, the voicemail still fails to show the perfection of service. First, it fails as evidence. The message speaks of "some paperwork." It names no summons, no complaint, and no lawsuit. On its face, it is not an acknowledgment of service of process. The Court's Opinion supplies the missing content by inference, reasoning that Michael had "no reason to call" counsel "other than to contact him with regard to the complaint."

**{¶51}** That is an inference about a contested fact, drawn against the party seeking relief, and it rests on a recording that has never been authenticated. The single identification of the voice came from opposing counsel's representation at oral argument, contradicted by Michael Vick's sworn affidavit denying service, with no proceeding to resolve the conflict between them. The Court faults the Vicks for declining to swear "it was not in fact Michael on the voice message." Majority Op. ¶ 26. However, it is the proponent of a recording who must authenticate it before it should be taken as true. Evid.R. 901(A).

Case No. 25 MA 0111

**{¶52}** Second, the voicemail fails as evidence in the manner of its crediting. Each Appellant swore, under oath, never to have "been personally served, by mail, or otherwise, with a copy of the summons or complaint." Majority Op. ¶ 7. A sworn denial of service rebuts the presumption of proper service and returns the burden to the plaintiff, and "when the movant's motion to vacate contains allegations of operative facts that would warrant relief, the trial court should grant a hearing on such motion." *ShiftMed, LLC v. Westchester Parkway Consulting, LLC*, 2025-Ohio-1554, ¶ 26 (8th Dist.) (citations omitted).

**{¶53}** The trial court did the opposite. It set an unauthenticated recording against two sworn affidavits and declared the affidavits false, without ever allowing Appellants their day in court.

**{¶54}** The Vicks sought relief from judgment under Civ.R. 60(B) and the trial court found that they failed to satisfy the three-prong test under *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 150-151 (1976) to warrant relief from judgment. *GTE* requires a movant to demonstrate:

> (1) the party has a meritorious defense or claim to present if relief is granted;
> (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3) not more than one year after the judgment, order or proceeding was entered or taken.

**{¶55}** I would find that the *GTE* test does not apply. Without proper service, I would find the court's default judgment is void and not voidable. A court's authority to vacate a void judgment "is not derived from Civ.R. 60(B) but rather constitutes an inherent power possessed by Ohio courts." *Ross v. Olsavsky*, 2010-Ohio-1310, ¶ 11 (7th Dist.) (quoting *Patton v. Diemer*, 35 Ohio St.3d 68 (1988), paragraph four of the syllabus). Since the judgment was void due to failure of service, the court lacked personal jurisdiction over Appellants.

**{¶56}** Even indulging the *GTE* framework, I would find both prongs satisfied. On the first, each Appellant swore under oath never to have "been personally served, by mail, or otherwise, with a copy of the summons or complaint." Majority Op. ¶ 22. A sworn

denial of service is an operative fact. "When the movant's motion to vacate contains allegations of operative facts that would warrant relief, the trial court should grant a hearing on such motion." *ShiftMed* at ¶ 26 (8th Dist.) (citations omitted). To dismiss that averment as "bare-bone" and "self-serving," Majority Op. ¶ 22, is to resolve on the papers the very credibility question a hearing exists to decide.

{¶57} On the second prong, the majority faults the Vicks for neglecting to do anything about a filed lawsuit. Majority Op. ¶ 31. But a defendant who was never served has no duty to respond and no answer period running against him. "Inaction upon the part of a defendant who is not served with process, even though he might be aware of the filing of the action, does not dispense with the necessity of service." *Maryhew v. Yova*, 11 Ohio St.3d at 157. The Ohio Supreme Court has confirmed this: "doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits." *GTE*, 47 Ohio St.2d at 151.

{¶58} For the above reasons, I would reverse the judgment of the trial court and remand with instructions to vacate the default judgment.

Case No. 25 MA 0111

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**NOTICE TO COUNSEL**

**This document constitutes a final judgment entry.**